225 So.2d 182 (1969)
L.A. RAMSEY, Appellant,
v.
STATE of Florida and Gerald Lee HEMPHILL, Appellees.
No. 68-460.
District Court of Appeal of Florida. Second District.
July 9, 1969.
*183 T. Richard Hagin, of Getzen & Hagin, Bushnell, for appellant.
J. Blan Taylor, Asst. State Atty., and James R. Adams, County Atty., for appellee, State of Florida.
PIERCE, Judge.
This is an appeal by appellant L.A. Ramsey from an order denying his petition to set aside a bond estreature and an order of forfeiture in a criminal case.
Appellant Ramsey is a licensed bail bondsman under the provisions of F.S. Ch. 903, F.S.A. On April 7, 1967, one Gerald Lee Hemphill was taken into custody and placed in the Pasco County jail in Dade City, upon criminal charges of "auto theft, kidnapping and attempted false imprisonment" theretofore instituted against him in the Collier County Circuit Court. That Court had previously fixed a $2,500.00 appearance bond for Hemphill. On May 25, 1967, Ramsey, in his capacity as a licensed bail bondsman, posted the $2,500.00 appearance bond, returnable "at the next Regular or Special Term of the Circuit Court" in Collier County, and procured Hemphill's release from custody.
On July 3, 1967, the Sheriff of Collier County advised Ramsey by letter that Hemphill was to appear in Circuit Court in Naples, Collier County, on August 11, 1967, at 9 o'clock A.M. On that date, the case was continued upon motion of the Public Defender until August 21, 1967. For some reason not disclosed by the record the case was not called on said August 21st, but was called up on August 28th, 1967, when, again upon motion of the Public Defender, it was continued in open Court to an unspecified date. Three days later, on August 31st, without notice to bondsman Ramsey, the case was called up in Circuit Court at Naples at 5:59 P.M. and the aforesaid appearance bond for $2,500.00 estreated and "forfeited to the use and benefit of Collier County".
Before such estreature was entered, the Court was advised that Ramsey had previously written the Circuit Clerk acknowledging *184 notice of the continuance from August 11th but asking that "if another appearance date had been set, to advise him. We would like sufficient time to contact him (Hemphill) so he can make arrangements". In the Court process of estreature the Judge instructed the bailiff to call defendant Hemphill's name three times in open Court, but neither the names of bondsman Ramsey nor his surety company were ever called.
On September 27, 1967, within thirty days after the estreature, Ramsey filed sworn petition to set aside the forfeiture, which petition was set by the State Attorney for hearing on October 12, 1967, which hearing date was continued to November 10, 1967, on which latter date the Court denied the petition. Apparently from the record, neither Ramsey nor his attorney was given opportunity to present argument in support of the petition at either the hearing of October 12th or November 10th. The matter was again brought up before the Court on November 15, 1967, again without any notice to Ramsey, whereupon the Court again denied the petition.
Meanwhile, on October 29, 1967, bondsman Ramsey had tracked down Hemphill and surrendered him on that date to the Pasco County Sheriff at Dade City, where Hemphill had originally been in jail when Ramsey made his bond. The Court officials in Collier County were so advised.
On November 15th, as aforesaid, not only was the estreature of the bond again confirmed, but Hemphill himself was produced before the Court, whereupon he pleaded guilty to the auto theft charge, being sentenced to three years in the State Prison therefor, and the other charges of "kidnapping and attempted false imprisonment" dismissed.
On August 6, 1968, the petition as amended to set aside the bond estreature was again called up for final disposition at which, for the first time, Ramsey and his attorney were before the Court. Full explanation of all the foregoing was given the Court, after which the Court denied the petition as amended, observing as follows:
"THE COURT: Well, the Court's opinion is that I have been through this thing, as it appears to me, 2 or 3 times, and, as I recall the particular incidents in this case, Hemphill was summoned for trial on a Monday morning at 9:00 o'clock, and because he didn't show up, or something, gave his attorney a continuance and I think that late in the afternoon, after 2 or 3 other trials, he never did show up and the Court forfeited the bond, as I recall, and that matter came up and, as I say, it was argued once before and about the same thing was said then that was said now. I am not changing my opinion. I deny your motion, but affirm the judgment of your estreature. That is all."
From the order of forfeiture, the bondsman Ramsey appeals to this Court and contends here that the statutory prerequisites to a legal forfeiture were not observed and that the order of estreature should be reversed. We agree.
Prior to 1961, the laws of Florida with respect to the activities of bail bondsmen were practically nil, and the procedure for bond estreatures was extremely vague and ambiguous. This had understandably produced an unhealthy effect upon the whole field of criminal Court procedure. The occupation, if it could be called that, of a bail bondsman at that time was suspect. Some, probably in the minority, were on the whole respectable, some were in the twilight zone, gauging their operations usually by the firmness or laxity of the local Courts; others were hardly more than mere racketeers, plying their nefarious bond-writing trade with a heedless disregard of ethics, fair dealings, or a rudimentary regard for the rights of the public or the public's Courts. Almost anybody could "qualify" as a surety on a criminal appearance bond, depending upon the indulgences of the local Sheriff or, more importantly, their "political standing" with him. *185 And while estreatments of bonds for failure of defendants to appear for trial were frequent and commonplace, actual Court judgments against sureties on such defaulted bonds were extremely rare and monetary collection on such bonds practically non-existent.
But in 1961, the Legislature by enactment of c. 61-406, brought order out of chaos in the bail bond field. It was a comprehensive measure, containing 24 Sections. It did three things: (1) it raised the writing of criminal bail bonds from a "fringe" pursuit to a respectable business, requiring persons engaged therein to attain certain qualifications and be licensed by the State Treasurer, who was given comprehensive regulatory powers and authority over such business, (2) it prescribed certain basic requirements and procedures in the writing and posting of such bonds, for protection of the Courts and the public generally, and (3) it erected certain statutory prerequisites to be mandatorily followed in the orderly estreature of defaulted bonds and collection of same by legal process, in justice to the bondsman engaged in such business. The Act was amended in 1959, 1961 and 1965, by c. 59-354, c. 61-406 and c. 65-492, respectively. It is only as to category (3) aforesaid, with which we are concerned in the instant case. The provisions of the three Session laws aforesaid[1] have been brought down in the biennial compilations as F.S. §§ 903.26 to 903.36, F.S.A. inclusive.
F.S. § 903.26, F.S.A. provides that before a bail bond may be forfeited the bondsman or surety must be "given seventy-two (72) hours or more notice exclusive of Saturdays, Sundays and holidays before the time of required appearance of the defendant; such notice to be given by the clerk of the court having jurisdiction of the defendant". We construe the language in the statute "the time of required appearance of the defendant" to mean not only the time or date specified in the bond itself when originally posted, but also to extend to the time or times to which trial of the defendant may be thereafter continued. So construed, bondsman Ramsey was never given the notice required by the statute.
The only notice ever received by Ramsey was not from the Clerk of the Court but from the Sheriff by letter written July 3, 1967, advising of the date of August 11, 1967, Hemphill should be in Court at Naples; and even on the latter date the case was continued without notice to Ramsey. While § 903.26 does not specifically say how the notice shall be given, the implication is irresistible that it must be in writing because it requires the notice "to be given by the Clerk of the Court having jurisdiction of the defendant", and Court Clerks traditionally transmit notices in writing. The point is academic here, however, because the required notice itself was never given as required by the Statute.
Further statutory provisions relating to forfeiture of bail bonds such as here involved were likewise not observed. F.S. § 903.27, F.S.A. provides that in such cases the prosecuting attorney of the Court in question "shall immediately file a certified copy of the order of the court ordering such forfeiture in the office of the clerk of the circuit court of the county wherein such order shall have been made," thereby clearly contemplating that such order of forfeiture must be in writing. § 903.27 then goes on to provide that, upon certain specified procedures being complied with by the prosecuting attorney, the Clerk shall enter a judgment against the bondsman for the amount of the bond and "shall give notice to the surety company thereof within ten days by furnishing the surety company at its home office a certified copy of said judgment", and that if the judgment is not paid within sixty days the clerk shall so notify the insurance commissioner (State Treasurer), who may then take certain *186 prescribed administrative action. None of these requirements were observed.
Also, § 903.26(6) provides that within sixty days after the date of forfeiture, the Court "shall direct that the forfeiture of the undertaking be discharged" if the bondsman gives "[a] satisfactory explanation of the breach of the undertaking". On September 27, 1967, within such period, Ramsey presented sworn petition showing he had not received the requisite statutory notices aforesaid. The record here shows that shortly thereafter bondsman Ramsey "captured" the defendant Hemphill and personally turned him over to the Pasco County Sheriff, who thereupon caused him to be produced before the Collier County Circuit Court and his criminal cases in short order finally disposed of. This process of surrendering the defendant, even after forfeiture, is affirmatively recognized by § 903.26(6) (c) and (d) as affording proper basis for a "remission of the forfeiture [to] be made to the surety".
Lastly, F.S. § 903.28, F.S.A. provides that after the forfeiture, and even after the same has been paid, if the bondsman "shall apprehend the defendant whose failure to appear * * * resulted in the forfeiture of the undertaking" and has caused him "to be returned to the custody" of the proper Court official, the forfeiture shall be refunded, unless the failure to sooner return the defendant "has defeated the ends of justice and thwarted the successful prosecution of the defendant", and the Court shall so find. Here the trial Court made no such findings, nor would such finding have been reasonably warranted in view of the relatively short time within which the bondsman caused Hemphill to be returned to the trial Court after forfeiture and that his criminal cases were terminated satisfactory to the State.
The foregoing statutory provisions are in harmony with, and carry out the intent of, F.S. § 932.45, F.S.A., which has been on the statute books of Florida since 1895, entitled "proceedings on estreat of bond; sureties to be called", and which provides that whenever a defendant in a criminal case fails to appear for trial as required by his bond, the Judge of the Court "shall cause the sureties on the bond to be called upon to produce the body of the person for whose appearance they have given bond", a provision that was, in the instant case, honored more in the breach than in the observance.
Forfeitures are not favored at law and a statute providing for forfeitures must be strictly construed. Boyle v. State, Fla. 1950, 47 So.2d 693; Texas Co. v. Pensacola Maritime Corporation, CCA Fla. 1922, 279 F. 19; City of Miami v. Miller, 1941, 148 Fla. 349, 4 So.2d 369.
The order of forfeiture appealed from is hereby reversed with directions to cancel the bond.
LILES, A.C.J., and McNULTY, J., concur.
NOTES
[1] relative to category (3).