## LEEVONN CLOUD *v.* STATE OF MARYLAND

[No. 312, September Term, 1971.]

*Decided February 10, 1972.*

The cause was argued before MURPHY, C. J., and MOY-LAN and POWERS, JJ.

*Russell J. White* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Edwin H. W. Harlan, State's Attorney for Harford County, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Clewell Howell, Jr., Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Leevonn Cloud, was convicted in the Circuit Court for Harford County by a jury, presided over by Judge Harry E. Dyer, Jr., of both rape and perverted practices. He raises here the unusual claim that the trial judge, by his action in revoking bail in mid-trial, revealed his own strong belief in the appellant's guilt and thereby prejudicially disposed the jury in that direction.

No question is raised as to the legal sufficiency of the evidence or as to the conduct of the trial proper. The relevant facts bearing on this novel contention are all collateral to the trial itself. Prior to trial, the appellant had been free on bail, a property bond posted by his mother and father. He had been on such bail for approximately eight months when the trial commenced on Wednesday, November 4, 1970. The trial continued through Thursday, November 5, and Friday, November 6. The appellant remained on bail throughout those first two and one-half days of trial.

At 11:15 a.m. on Friday, the State closed its case in chief, reserving only the right to reopen the case on the following Monday to present the testimony of one F.B.I. agent, who would not be available until that time. At that point, the jury was excused from the room and the trial judge made the following announcement:

426

"Now, in view of the fact that we are at the point of closing the State's case, the Court feels that it can no longer permit the Defendant to remain free on a bond that expired when he first came into the court on Wednesday, or whenever it was that we started this trial.

Actually, of course, the Court didn't realize it at first, but the bond stops when the Defendant appears in Court for trial.

He has been free on his own recognizance. The Court does not feel that that can continue at this stage of the case.

So that I will have to direct the Sheriff to take charge of the Defendant at this time.

I understand that the Defendant will be returned to Towson for the weekend and will be brought to this Court on Monday.

I direct the Police of Baltimore County—and I don't know to whom I should speak, because I don't know who the Senior Officer is that might be present—but whoever it might be and I think they can all hear me, I do not want the jury to be made aware of any change in the status of this Defendant on Monday or at any time during the progress of this trial, which means that I want the Defendant brought into the Sheriff's Office on Monday morning well before ten o'clock,—or well before 9:30, or 9:00 even, and I want the Sheriff then to be responsible for him, bringing the Defendant to this Courtroom. And I do not want handcuffs on the Defendant in the Courtroom at all when he comes in.

Whatever precautions you Police think are necessary outside is up to you all. I am not going to interfere with Police practice, but I do not want that to be displayed in here.

And I want the Defendant in the Courtroom before the Jury gets here, which means that I would suggest that you have the Defendant in

the Courtroom no later than 9:45 and prefer-
ably around 9:30."

This unexpected turn of events precipitated an ex-
tended colloquy between the court and appellant's coun-
sel. Over the repeated protests of the appellant and un-
der strenuous probing by the appellant for the reasons
for the action, the trial court explicitly and repeatedly
insisted that the only reason for taking the action was
that the bail which had earlier been posted had expired
with the appearance of the appellant at the commence-
ment of the trial on Wednesday morning.

Since there was no indication that the State ever
sought a change in the appellant's status or that the
court, *sua sponte,* felt such a change to be in order on
the ground that the appellant was not a good bail risk,
it is unnecessary for us to decide whether a trial court,
in the absence of any new circumstance, may review and
override an earlier decision that a defendant shall be
free upon bail. See Md. Rule 777. We look only at the
court's action in terms of the reasons given by the court
for that action.

We feel that the trial court was in error in its conclu-
sion that the liability of the surety terminated with the
commencement of the trial. The Property Bail Applica-
tion and Recognizance, signed, sealed and posted by the
mother and father of the appellant, pledged their prop-
erty at 4113 Boarman Avenue, assessed at $8,800, as
security "for the appearance of the above defendant in
court when required." It recited further, "Failure to ap-
pear to answer said charge and all other charges which
may be preferred, shall constitute a forfeiture of the
bail."

Although this precise problem does not appear to have
been dealt with before in the appellate decisions of this
State, the law nationally is well settled. The liability of
the surety continues not only throughout all pretrial
phases of a prosecution but from day to day throughout
the trial itself. Although there is some difference of

428

opinion as to whether the liability ultimately terminates upon a finding of guilty or whether it continues through the act of sentencing, there is no dispute as to the fact that it continues not only throughout the production of evidence and the argument but also even after the jury has retired for its deliberations and even in cases where a mistrial has been declared. 8 Am.Jur.2d, *Bail and Recognizance*, Section 99, "Duration of Liability;" Section 102, "After Retirement of Jury;" Section 104, "After Mistrial." See also Annotation, "Bail: Stage of Proceeding at which Sureties are Discharged in Criminal Case," 20 A.L.R. 594.

Any other result would work an absurdity. It cannot seriously be contended that a defendant, eligible for bail, should be required to post a fresh bond, involving the payment of a fresh premium, on a day-to-day or, indeed, on a session-to-session basis throughout the course of a long and extended trial. If every appearance in the courtroom terminated the existing liability of the surety, and every adjournment or recess imposed the new burden of posting a new guaranty to assure reappearance upon the reconvening of the court, even a modest initial bail, thus multiplied manifold, would *in toto* offend the Eighth Amendment's prohibition against "excessive bail."

We, therefore, hold that the trial court was in error in revoking the appellant's bond for its assigned reason in this case. Such error is not necessarily dispositive of the larger issue in the appellant's favor, however. He did move for a mistrial immediately upon the revocation of the bail. He renewed his motion for a mistrial when the case was resumed on the following Monday morning. He predicated his motion, on that second occasion, upon the fact that he was required to leave the courtroom on Friday afternoon accompanied by four or five detectives. He does not allege that any juror saw him on that occasion. The second motion for mistrial was denied. On Monday afternoon the appellant made yet a third motion for a mistrial. He predicated this motion upon the

fact that, upon leaving the courthouse at the noon recess, he was handcuffed when he reached the front steps and was thereafter observed by one of the ladies on the jury. He contended further that he and his custodians were at one point across the street from four of the male jurors. He does not allege that any of those jurors were looking in his direction.

The appellant's thesis is speculative in the extreme. Indeed, it is a speculation based upon a speculation to the seventh power. Its reasoning runs as follows: One or possibly more jurors were in a position to observe that on Monday, outside the courtroom, the appellant was either in the company of police officers or in handcuffs; the juror in the position to make such an observation may, in fact, have made it and may have taken significant note of it; that juror may have communicated this fact to the other jurors; some or all of the jurors may have appreciated the fact that the appellant was under no restraint whatsoever during the earlier phases of the trial; they may have concluded that the trial judge had taken an affirmative step to change the appellant's status in the course of the trial; they may have concluded that the trial judge did this for the reason that he was strongly persuaded by the evidence that the appellant was guilty; and the jury may have been thereby persuaded of the appellant's guilt by its belief that the judge was so persuaded.

The appellant seeks to rely on *Jones v. State,* 11 Md. App. 686, and *Vandegrift v. State,* 237 Md. 305, to support his contention. In *Jones,* the defendant was shackled and gagged in the courtroom in the presence of the jury. In *Vandegrift,* the Court of Appeals was dealing with the questioning of a witness by the trial judge in the presence of the jury. The speculative hypothesis of the appellant in the case at bar is so factually remote from both *Jones* and *Vandegrift* as to divest them of any arguable analogy to this case.

In the absence not only of any showing of prejudice but of any showing of a significant likelihood of prejudice,

we are persuaded, beyond a reasonable doubt, that any error committed by the trial judge in revoking this appellant's bail in mid-trial did not contribute to the finding of the guilty verdict by the jury here. The error was, therefore, harmless.

*Judgments affirmed,*