STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. EDGAR MONCRIEFFE AND DEBORAH STOUT, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 14, 1978—Decided April 24, 1978.

Before Judges HALPERN, LARNER and KING.

*Mr. Paul M. DePascale,* Assistant Prosecutor, argued the cause for plaintiff–appellant and cross-respondent (*Mr. James T. O'Holloran,* Prosecutor of Hudson County, attorney).

*Mr. Richard A. Sonntag,* Assistant Deputy Public Defender, argued the cause for defendants-respondents and cross-appellants (*Mr. Stanley C. Van Ness,* Public Defender of New Jersey, attorney; *Mr. Ronald Shaljian,* designated counsel, on the brief).

The opinion of the court was delivered by

KING, J. A. D. The issue in this case is the relationship between *R.* 3:26–5 entitled "Justification of Sureties" and the 10% cash bail program permitted by *R.* 3:26–4(a).

Effective September 10, 1973 the Supreme Court amended *R.* 3:26–4(a) to provide:

In any county, with the approval of the Assignment Judge, a program may be instituted for the deposit in court of cash in the amount of 10 percent of the amount of bail fixed.

To date, 11 counties have adopted a 10% cash bail program.

The 1973 rule amendment followed the Supreme Court's experimental authorization of a 10% cash bail program in Atlantic County in 1971. Forman, "Atlantic County Ten Percent Cash Bail Project," 1 *Crim. Just. Q.* 185 (1973). The objective of this experiment was to try to "eliminate the punitive and often-times abuse-laden corporate surety bond system." *Id.* The program was motivated by the success of similar efforts in Cook County, Illinois, and the District of Columbia.

No specific guidelines were set down by our Supreme Court when *R.* 3:26–4(a) was amended in 1973. Then Assignment Judge Horn of Atlantic County had previously set forth procedures which he developed when the pilot program was started in February 1972. Forman, *supra* at 192. Judge Horn's letter order implementing the program states: "Under this system bail will be set as has been heretofore. Once the amount is set, however, the defendant shall be permitted to post directly an amount of *ten percent* of the bail, *and shall execute a recognizance bond for the full amount.*" The procedures also contain an option for defendant to post a freehold or property bond, if he desires. The procedures provide that upon the deposit of 10% of the bail, and the execution of the bail bond, the accused shall be released from custody. When the conditions of the bail bond are performed the 10% cash deposit is to be returned to the accused or the person who posted it. *Id.* at 193–194.

Following the success of Atlantic County's pilot project, and the September 1973 amendment to *R.* 3:26–4(a), ten counties have adopted their own programs. Each of these counties has adopted essentially similar procedures for the operation of the 10% cash bail program. To date the Supreme Court has not adopted formalized procedures for the program.

This court has recently considered the program. We held that under this program the total amount of bail must be set at a reasonable amount, without regard to the availability of the 10% cash bail program. We reversed a trial judge who set the total amount of bail with an eye towards whether the 10% cash amount was adequate to insure the defendant's appearance, saying:

> It is abundantly clear that bail was fixed with the predetermined intent that the 10% cash amount was the motivating force, not the $30,000 actually fixed. This approach is contrary to the Supreme Court's intent in adopting *R.* 3:26–4(a). The rule contemplates bail to be fixed in such reasonable amount as will ensure defendant's appearance at all stages of the proceedings until final determination of the matter. The 10% cash deposit program, as it is now operative, is not to be utilized in lieu of reasonable bail. Rather it is to empower the trial judge, in counties where the program has been approved by the assignment judge, to permit the posting of 10% "of the amount of bail fixed". This would avoid the necessity of paying for a surety bond and enable a defendant to get back his deposit on compliance with the terms of the recognizance. [*State v. McNeil*, 154 *N. J. Super.* 479, 481 (App. Div. 1977)]

With this background we turn to the question posed by this case arising from Hudson County, which adopted the program in August 1973, when Judge Larner was assignment judge.

Defendant Moncrieffe was held in $25,000 bail on a homicide charge. His mother, Pearl Webber, posted $2,500 in cash and signed a recognizance for the balance of $22,500. Defendant Stout was held in $10,000 bail on a similar charge. Her mother posted $1,000 cash. Both were released under the 10% cash bail program pending trial.

Thereafter the assistant county prosecutor moved for revocation of Moncrieffe's bail on the ground that he had failed to file a "Justification of Sureties" as allegedly required by *R.* 3:26-5, which states:

Every surety, except an approved corporate surety, shall justify by affidavit and be required to describe therein the property by which he proposes to justify and the encumbrances, thereon, the number and amount of other recognizances and undertakings for bail entered into by him and remaining undischarged, if any, and all his other liabilities. No recognizance shall be approved unless the surety thereon shall be qualified.

The matter was set for a hearing and the prosecutor's application was expanded to include the defendant Stout. The trial judge reluctantly concluded that *R.* 3:26-5 applied to the 10% cash bail program and ordered defendants' compliance therewith. The judge noted:

This court is acutely aware that its holding in this case may have a chilling effect on the "10% cash deposit" bail program, since a great number of personal sureties will find it impossible to file proper affidavits under *R.* 3:26-5. This is a regrettable sequela, but faced with the rules of bail in their present posture, this court has no other alternative but to order the enforcement of these rules. Perhaps the Supreme Court in its wisdom (assuming this court is correct in its ruling herein) will see fit to amend the rules to cure whatever problems are created by this case at bar.

Defendants thereafter offered to the court the affidavits of Ms. Webber, Edward Bishop and Richard Lewis for defendant Moncrieffe, and the affidavit of Ms. Stout for defendant Stout, in compliance with *R.* 3:26-5. The affidavits of Webber, Bishop and Lewis list no real property among the assets described. Each affidavit lists various items of personal property: antique sheet music, televisions, watches, rings, furniture, cars, and also lists savings accounts, current salaries, as well as Social Security income and veteran's benefits. The affiants denied the existence of other encumbrances on their respective lists of "property or assets," denied "other li-

abilities" and denied that they were surety on any other recognizance. Stout's affidavit listed $2,500 equity in real estate, along with personalty, bonds and her salary as her assets. The trial judge accepted the affidavits as satisfying R. 3:26-5.

The prosecutor then moved for leave to appeal from the trial judge's order on the ground that "the Court abused its discretion in its finding of sufficiency of the affidavits submitted to justify the sureties on the individual recognizances." The Public Defender thereafter moved for leave to cross-appeal on the ground that R. 3:26-5 "Justification of Sureties," was not a condition of the 10% cash bail program. We granted both applications and accelerated the matter for argument. R. 2:11-2.

██ We will not dismiss the cross-appeal as moot, despite the fact that defendants are at liberty and have complied with R. 3:26-5 and the requirements imposed by the trial judge. The issue presented by the cross-appeal is of continuing importance in the administration of the 10 percent cash bail program in Hudson County and throughout the State. We may determine a moot appeal when the public interest in the issue presented is so great as to make its resolution desirable. *DeRose v. Byrne,* 139 *N. J. Super.* 132, 134 (App. Div. 1976).

█ We hold that R. 3:26-5, "Justification of Sureties" is not an automatic condition of the 10% cash bail program and reverse.

There is nothing in the language of R. 3:26-4(a), or in the historical development of the 10% cash bail system in this State, which requires a defendant opting for the program to provide any kind of surety. To now so require could well eviscerate this laudatory program. If defendants were required to post full surety under R. 3:26-5, in addition to the 10% cash, the 10% cash bail program would be meaningless and of no moment.

Indeed, most criminal defendants and their personal sureties could only list, as was largely true in the present

case, personal property and liquid assets which could be quickly transferred and which would present only a sham security for the defendant's appearance at trial. Only real estate would provide meaningful security because the recognizance filed would be notice to the world of the encumbrance. *N. J. S. A.* 2A:15–46. Very few criminal defendants could themselves post a real estate bond, or obtain a surety who could do so. The comment of Judge Pressler to *R.* 3:26–4(a) wherein she states:

> \* \* \* Paragraph (a) was further amended, effective September 10, 1973 by the addition of the last sentence which permits the Assignment Judge to approve a program for his county permitting a cash deposit of ten per cent of the amount of bail fixed *in full satisfaction* of the bail requirement. [*Pressler, Rules Governing the Courts of the State of New Jersey* (1977 ed), *R.* 3:26–4, at 462; emphasis supplied]

accurately reflects the development of the 10% cash bail program in this State.

The 10% cash bail program was intended to be in lieu of surety. Assignment Judge Horn's original procedure, promulgated on January 31, 1972 with permission of the Supreme Court, stated:

II. PROCEDURE

\* \* \* \* \* \* \* \*

> B. Any person for whom bail has been set may at his option execute either a freehold bond as heretofore *or a bail bond without surety* and deposit with the official admitting to bail a sum of money (hereinafter "bail deposit") equal to 10% of the bail, or $25, whichever is greater. [Forman, *supra* at 193; emphasis supplied]

However, a defendant must still execute a recognizance under *R.* 3:26–4(a) and is still liable for the 90% balance if there is a default in the conditions of the recognizance. *R.* 1:13–3(b).

Our rule also contemplates flexibility. It states, "One or more sureties may be required. Cash may be accepted, and in proper cases no security need be required." *R.* 3:26–4(a).

In the present cases the judge setting bail made no requirement of sureties. An exceptional case may arise where a bail judge may for a special reason wish to require surety in addition to the 10% cash, or corporate surety bail entirely, or real property bail, but in the routine administration of the cash bail program no sureties are required by our rules.

We understand it has been the practice in some counties where a person, other than the defendant, posts the 10% cash, that person is required to sign the recognizance as a surety. This practice is unnecessary and undesirable. It should be discontinued. Compliance with *R.* 3:26–4(f)[1] is all that is necessary when cash is posted by a person other than the defendant.

We conclude that *R.* 3:26–5 is irrelevant to the routine administration of the 10% cash bail program. It does not come into play with respect to that program unless, and until, the bail judge specifically requires the posting of surety upon setting bail. Under what special circumstances a surety may be required in addition to or in lieu of the 10% cash we prefer to leave to the sound discretion of the assignment judges to whom the administration of the various programs is entrusted, especially since the question is not pertinent to this case.

The justification of sureties required by the trial judge is vacated. The relief demanded on the direct appeal is therefore moot and the direct appeal is dismissed. The matter is reversed and remanded to the trial court.

---

[1]"CASH DEPOSIT. When cash is deposited in lieu of bond by a person other than the defendant, the defendant shall file an affidavit as to the lawful ownership thereof and upon discharge, such cash may be returned to the owner named in the affidavit."