Rockingham
No. 79-218

### THE STATE OF NEW HAMPSHIRE

v.

### NICHOLAS MOCCIA & a.

May 5, 1980

*Paul R. Pudloski,* assistant Rockingham County attorney, by brief and orally, for the State.

*Sullivan, Gregg & Horton,* of Nashua (*James L. Sullivan* orally), for Thomas Corey, bondsman.

GRIMES, C.J. In this appeal, a surety seeks to overturn the order of the court below forfeiting posted bail. We reverse.

Appellant in this case is Thomas Corey, a professional bondsman. In February 1977, criminal defendants, Nicholas Moccia and C. Scott Heggie, were arrested. Moccia was charged with four separate felony offenses, and Heggie was charged with three. On February 28, 1977, Corey posted a corporate surety bond in the amount of $15,000 to secure Moccia's release from custody. On the same date, he posted a similar bond in the amount of $2,500 on behalf of the defendant Heggie. Subsequently on January 13, 1978, Corey posted a bond in the amount of $25,000 with the United States District Court for the District of New Hampshire on behalf of the defendant Moccia.

Moccia and Heggie were called for trial in February 1978. It appears that the cases were consolidated and tried beginning February 16, 1978, on one charge only, the others being continued.

The jury rendered verdicts of guilty against each defendant. The Trial Court (*Loughlin*, J.) sentenced each defendant, but stayed execution thereof while the defendants appealed. The court ordered that the bail continue as before.

On June 26, 1978, defendant Moccia failed to appear in the federal court. Accordingly, his bail was forfeited, the court so notifying Corey by mail. In light of Moccia's failure to appear in the federal proceedings, on July 11, 1978, the State petitioned the superior court to reconsider bail. On August 7, 1978, the Trial Court (*Bean*, J.) continued the State's request. On September 15, 1978, Corey paid the forfeited $25,000 into federal court.

No further proceedings were had in the superior court until March 5, 1979, when the defendants were called for trial on the continued charges. Both failed to appear. The Trial Court (*Mullavey*, J.) ordered the defendants defaulted on the remaining charges, forfeited bail and issued bench warrants.

Meanwhile, the appeals taken from the February 16, 1978 trials were decided by this court adversely to Moccia and Heggie. *State v. Moccia*, 119 N.H. 169, 400 A.2d 44 (1979). On March 22, 1979, the clerk of the Rockingham County Superior Court wrote to Corey requesting payment of the $17,500 bail forfeiture. By motion dated June 18, 1979, Corey requested that he be released from liability upon the bail bonds. His motion was denied by *King*, J., on July 17, 1979. Corey seasonably filed a notice of appeal with this court.

As a preliminary matter, we note that effective January 1, 1978, the legislature has empowered the New Hampshire Commissioner of Insurance to regulate professional bondsmen and bail bonds generally. RSA 598-A:4 (Supp. 1979); *see generally* N.H. Insurance Regulation No. 23. In the present case, however, the surety bonds on behalf of the defendants Moccia and Heggie were executed prior to the effective date of RSA ch. 598-A (Supp. 1979). The parties concede that they are governed by the then prevailing superior court rule 105. Accordingly, the question of the retrospective application of Insurance Regulation No. 23 is not before us. *See* N.H. CONST. pt. 1, art. 23.

Superior court rule 105 provided, in pertinent part, as follows:

> All bonds will remain in effect from the date of issue until disposition by the Superior Court; provided, however, should the respondent elect to appeal to the Supreme Court from a decision of the Superior Court,

*the bondsman may issue a new bond to be effective during the appeal period and charge a fee therefor . . . .*

(Emphasis added.) The bondsman argues that disposition means verdict, judgment and sentencing; he therefore asserts that the appearance of the defendants for trial in February 1978 discharged the surety's obligation upon the bail bond. We do not agree.

■ We construe the bondsman's obligation upon a bail bond to be a continuing one.

Under the terms of most criminal bail bonds, the obligation of the surety is to produce the accused whenever necessary in the prosecution of the charges which have been made against him, or at any stage of the proceedings *until the prosecution is ended and the defendant is discharged by the court or by operation of law, or custody of the defendant is transferred to proper officers of the law.*

(Emphasis added.) 8 AM. JUR. 2d *Bail and Recognizance* § 99 (1963); *see United States v. Wray*, 389 F. Supp. 1186, 1190–91 (W.D. Mo. 1975). We believe that rule 105 indicates that the bond continues even during an appeal from a conviction by the defendant. The bondsman argues that such a conclusion unfairly heightens his risk. Professional bondsmen in New Hampshire are aware, however, that in most instances defendants are entitled to release during the pendency of their appeals. RSA 597:1-a (Supp. 1979); *see, e.g., State v. Seeley*, 116 N.H. 57, 357 A.2d 870 (1976). When they determine whether to execute such a bond, they must necessarily consider the possibility that a defendant may remain at large during the pendency of an appeal. The part of rule 105 that relates to a new bond merely provided a mechanism whereby a bondsman, upon his determination of enhanced risk, may gain additional security and fee at his election. Otherwise, his common-law remedy is to seek permission of the court to surrender his principal to the proper authorities. RSA 597:27; *State v. Fedrico*, 82 N.H. 258, 132 A. 679 (1926); *Commonwealth v. Stuyvesant Insurance Co.*, 366 Mass. 611, 321 N.E.2d 811 (1975); 8 AM. JUR. 2d *Bail and Recognizance* § 130 (1963). Unless the bondsman pursues either of these two alternatives, the bail bond remains in force throughout the proceedings, including the pendency of the

appeal, until final disposition. *See, e.g., State v. Hurley,* 201 Neb. 569, 270 N.W.2d 915 (1978); *Surety Corp. of America v. State,* 550 S.W.2d 689 (Tex. Cr. App. 1975); *cf. Cloud v. State,* 14 Md. App. 424, 287 A.2d 316 (1972).

The bondsman next argues that even if his obligation on the bonds continued after the February 1978 trials, the superior court was obliged to notify him of the convictions of his principals. He argues that the court's failure so to do deprived him of his right, conferred by rule 105, to reconsider his position vis-a-vis the defendants. He concludes, therefore, that he is entitled to a discharge on the bonds. Again we disagree.

■ ■ As we have said above, the fact that the defendants appealed their February 1978 convictions did not, *ipso facto,* require that a new bond be issued. Rule 105 merely gave the bondsman an opportunity to seek further security and fee. Moreover, we note that as of February 16, 1978, three charges were outstanding against the defendant Moccia and two against the defendant Heggie. Continuance of those charges, even without notice to the surety, had no effect upon the validity of the bonds. *E.g.,* 8 C.J.S. *Bail* § 82 (1962). Granting, however, that he might have executed a new bond with the defendants during the pendency of their appeal, the superior court was not obligated to notify Corey of the conviction of his principals.

■ Historically, the release of a criminal defendant on a bail bond had the effect of transferring custody to the surety. Restatement, Security § 204 and Comment (1941); *Commonwealth v. Stuyvesant Insurance Co.,* 366 Mass. 611, 321 N.E.2d 811 (1975). The surety's obligation is to produce the defendant in court at appropriate times; "[i]t is therefore incumbent upon them to be aware of his location." *United States v. Marquez,* 564 F.2d 379, 380 (10th Cir. 1977); 8 C.J.S. *Bail* § 82 (1962); 8 AM. JUR. 2d *Bail and Recognizance* § 176 (1963). Because of this obligation upon the surety, the rule in this country has always been that, absent some statutory provision to the contrary, there is no obligation upon the court to provide the surety notice of its actions regarding the accused. *Id.; United States v. Vera-Estrada,* 577 F.2d 598 (9th Cir. 1978); *United States v. Marquez,* 564 F.2d 379 (10th Cir. 1977); *Commonwealth v. Stuyvesant Insurance Co.,* 391 N.E.2d 277 (Mass. App. 1979). Accordingly, the failure of the superior court to notify Corey of the conviction of his principals does not exonerate his obligation upon the bonds.

The bondsman lastly argues that because he received no notice of the defendants' March 1979 trial date, he was never given an opportunity to discharge his obligation upon the bonds by producing the defendants, and is therefore not liable. As we have noted, the general rule is that the court need not provide such notice; that as a necessary incident of assuming custody of the accused, the surety acquires a duty to learn when his principal's presence in court is required. However, counsel for the county has advised the court that it is standard procedure for the clerk to notify each bondsman by mail when his accused has been called for trial by sending him a copy of the trial list. The record shows a checkmark on the trial list for February 16, 1978, indicating that a copy was sent to Corey. The list for March 1979, however, bears no such checkmark.

We therefore cannot determine whether notice was ever afforded Corey of the March trial date. Nor are we persuaded of the soundness of a rule that requires no notice be afforded bondsmen of trial dates. The purpose of requiring sureties on a bail bond is to assure the presence of the accused at all times necessary to the disposition of his case. Restatement Security § 203 (1941); 8 AM. JUR. 2d *Bail and Recognizance* § 4 (1963); 8 C.J.S. *Bail* § 4 (1962). Although we recognize the propriety of imposing a duty upon the surety to know the whereabouts of his principal and the status of his case, we are also of the view that the trial court should provide notice of appearance dates, for it is upon such dates that the surety's liability turns. *See, e.g., State v. Fedrico*, 82 N.H. 258, 132 A. 679 (1926). Such notice may easily be provided by mailing copies of court trial lists, or other notices, to bondsmen, a procedure that Rockingham County apparently usually follows.

Because we are unable to determine whether such notice was afforded Corey of the defendants' March 1979 trial date, we remand for a finding on this issue. If the court, upon remand, determines that Corey did in fact receive notice, judgment on the forfeiture may issue. RSA 597:33. If the court determines that the bondsman had no notice and thus, no opportunity to cause his principals to appear, the default should be stricken and the bondsman given a reasonable time in which to bring the defendants before the court. RSA 597:32; *see United States v. Brizuela*, 508 F.2d 386 (9th Cir. 1974); *People v. Parisi*, 217 N.Y. 24, 111 N.E. 253 (1916). "[A]s a matter of practice, no district

attorney would be inclined to take advantage of the default of a surety who, through innocent inadvertence, mistake, or ignorance, had failed to produce his principal at the proper time and place . . . ." *Id.* at 26, 111 N.E. at 254. If, however, after notice, should the bondsman fail in his task, the court may take appropriate steps to declare a forfeiture. *See, e.g., United States v. Brizuela,* 551 F.2d 249 (9th Cir. 1977). Attention is called to the provisions of RSA 642:8 which make it a separate crime to fail to appear when released with or without bail.

*Reversed and remanded.*

KING, J., did not sit; the others concurred.