STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. DON-ALD CAUSEY, ET AL., DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 21, 1983—Decided May 18, 1983.

258

Before Judges ARD, KING and McELROY.

*Jeffrey M. Keiser* argued the cause for appellant Indemnity Insurance Company (*Ballen, Keiser & Denker,* attorneys; *Mary K. White,* on the brief).

*John Philip Maroccia* argued the cause for respondent (*Steven Weinstein,* County Counsel, attorney).

The opinion of the court was delivered by

KING, J.A.D.

In this case the bail-bond surety company contends that it should be relieved of forfeitures and judgments in 46 cases because it received no notice of its principals' court appearances before forfeiture was declared and received untimely notice of the forfeitures. Pursuant to stipulation by counsel, only the named *Causey* case must be specifically decided. The other cases will be controlled by this decision.

The *Causey* case is illustrative. Indemnity Insurance Company of North America, through its bondsman, Lowell Toll, issued recognizance # 52844 on behalf of Causey in the amount of $5,000 on August 17, 1979. Causey failed to make a scheduled appearance and forfeiture was declared on the record pursuant to *R.* 3:26–6(a) on September 26, 1979. Notice of the forfeiture was not given to the surety until December 24, 1980. Not until August 4, 1981 did the office of Camden County Counsel move for judgment, although settlement negotiations were conducted between December 1980 and August 1981. Thereafter INA moved for an order discharging the recognizance or setting aside

the forfeiture because of lack of notice of the dates when its principal was required for court appearances. Following oral argument, Judge Bigley entered judgment for the County in the amount of $5,000 in October 1981.

The *Causey* case was fairly typical of the proceedings in these 46 cases. The time lapse in *Causey* between forfeiture and notice to the surety that judgment on the forfeiture would be sought was 15 months, September 1979 to December 1980. In this group of cases, the longest time lapse between these events, forfeiture and notice of motion for judgment, was 16 months; the shortest lapse was two months. In nine cases the judge, upon hearing proofs from the bondsman and considering other facts, exonerated the surety.[1] *R.* 3:26–7.

This group of forfeiture cases developed against this background. In August 1972 the Administrative Office of the Courts (AOC) issued a directive titled "Procedure for Enforcement of Corporate Surety Bonds." The cover memorandum issued by Assistant Director Bambrick stated:

> These procedures have been developed so as to facilitate the collection of bail from corporate sureties where there has been a forfeiture and also where the corporate surety has failed to pay on the forfeiture and it is necessary to enter a judgment thereon.

The directive stated:

> 1. When there is a breach of a condition of the recognizance, the prosecuting attorney shall move for a declaration of forfeiture, *R.* 3:26–6(a), or the court on its own motion may declare a forfeiture. When a forfeiture is declared, the clerk of the court shall entered the word "forfeited," and the date of forfeiture at the end of the record of such recognizance, and the clerk of the court shall immediately send notice of the forfeiture and demand for payment of the amount of the bond to the bondsman (the attorney-in-fact) and a copy of same should be sent to the corporate surety care of the address on the power of attorney. The notice should include the following: docket number, defendant's name and address, amount of the bond, date of forfeiture, the name and address of the corporate surety as shown on the power of attorney, the name of the attorney-in-fact and the number of the power of attorney. The notice should state that if the amount of the bond is not paid within 20 days, the County

---

[1]Gonzalez, Lamboy, Dobbins, Johnson, Howell, Forrest, Bennet, Alexander and Booster.

Counsel will be notified to enforce the liability of the surety by motion for entry of judgment.

2. If the amount of the bond is not paid within the 20 days, or the forfeiture is not set aside within the 20 days, the clerk of the court should then immediately send notice of the forfeiture to the County Counsel who shall forthwith proceed to collect the forfeited amount pursuant to R. 3:26–6(a). The notice to the County Counsel should include all the information sent to the corporate surety in 1. (above) and request the County Counsel to forthwith proceed to collect the forfeited amount pursuant to R. 3:26–6(a). The clerk of the court should send a copy of this notice to the Assignment Judge and to the County Prosecutor.

## The standard recognizance form used in this state says:

We, the undersigned, jointly and severally acknowledge ourselves to be indebted to the State of New Jersey in the sum of _____ Dollars ($ ) to be made and levied of our and each of our goods, moneys, chattels and real estate if default be made in the following Conditions, to wit:

The Conditions of this Recognizance are that the Defendant shall personally be and appear at all stages of the proceedings and until the final determination of the cause and that the Defendant and Surety agree to immediately notify the Court of change of address; and if the Defendant and Surety comply with these Conditions, then this Recognizance is to be void.

We, the undersigned, principals and sureties, do hereby acknowledge that by entering into this Recognizance that they submit themselves to the jurisdiction of this Court; that they irrevocably appoint the Clerk of the Court having jurisdiction of this cause as his agent upon whom papers affecting each of their liability on the Recognizance may be served; that each of them waive a Jury Trial; that the Liability of the Principal and Surety may be enforced by Motion of this action, if one is pending without the necessity of an independent action; and that the Motion may be served on the principal and Surety by mailing it by ordinary mail to the Clerk of the Court, who shall forthwith mail a copy thereof by ordinary mail to the Principal and Surety at the address stated herein. [See R. 1:13–3(b).]

Neither the rules of court nor the recognizance agreement require notice of court appearance to the bondsman or to the corporate surety.

Toll testified that during late 1980 and early 1981 he received notice of forfeitures and motions for judgments in about 96 cases. Many of these bailed defendants were located and bail has been exonerated in about half of the cases. Toll said that notice of court appearances in Camden County had been sent to the bail bondsman as agent for the surety until the early 1970's when the 10% cash bail program became the most popular form of pretrial conditional release. R. 3:26–4(a); see State v. Single-

262

*ton,* 182 *N.J.Super.* 87, 89 (App.Div.1981); *State v. Moncrieffe,* 158 *N.J.Super.* 528, 530–533 (App.Div.1978). Thereafter, notice of court appearance dates from the County Clerk to the bondsman, as agent for the corporate surety, ceased. Toll testified that some other counties where he writes bonds in this state, *i.e.,* Salem, Burlington and Middlesex, still give him notice of court dates, while others, *i.e.,* Gloucester and Camden, do not. Toll also testified of his attempts, through his own activity and his investigators, to keep track of his principals. He contended that lack of notice of court appearances impeded his efficiency in this respect. County Counsel advised us at oral argument that only about 2% of the county's criminal defendants are at large on corporate surety bail pending trial. The balance use the 10% cash bail program or are released on their own recognizance.

At the conclusion of the September 23, 1981 hearing Judge Bigley took judicial notice that Camden County published a weekly list of all trial and pretrial appearances for criminal defendants. He found that these lists were readily accessible to the corporate surety and its agents. On the notice issue the judge ruled as follows from the bench.

We are dealing with a two-fold notice, as you have argued. I find nothing in the law that requires the prosecutor to give to the surety a notice of the particular defendant's scheduled court appearance date. The recog is a contract between the surety and the State. I reviewed the contract and it has been set forth, of course, in both of your briefs there doesn't seems to be anything in the contract that is ambiguous. It requires the production of the defendant for all court appearances. It's a contract that, of course, is quite clear, and there is no requirement by any case law that I know of to give notice to the surety of a court appearance date. I specifically refute the argument set forth that the notice dates are unavailable to anyone including the surety.

\* \* \* \* \* \* \* \*

I also find that the notice directive [from the AOC], while certainly it is couched in mandatory language, I don't think that your argument that it is for the benefit of the surety is a valid one. I think what has happened in the past, unfortunately again, we have had some delay here, the delay here is that many times throughout this State we found that these forfeitures were not being acted upon in accordance with the rules and, therefore, the directive came down, so to speak, to light a fire under the County Counsel's office, and to proceed with the collection of the forfeitures that already had been forfeited in accordance with the rules, and to require the County Counsel that is charged with the

moving of the forfeitures to judgment, and the important bottom line, the collection of the money, and any violation of that should not inure to the benefit of the surety, particularly in this case where we have a situation where apparently in December County Counsel gave the surety an opportunity to produce these people and has met with some limited success in producing some of them.

Thereafter, the judge issued a written opinion on November 24 on six reserved matters.[2] He entered judgments on these six forfeitures and made the following comments:

The Surety contends that the final forfeitures should be set aside because it was not notified of the previous forfeitures, the setting aside of the previous forfeitures, and the reinstatement of bail. I have previously held from the bench in a related matter that the Surety is not entitled to receive separate notice of each and every court appearance required of the defendant-principal. Such appearances are a matter of public record and it is the Surety's responsibility to keep itself informed of these dates as part of its business. Here the Surety is asking to be immediately notified when a forfeiture is entered against it, when the defendant-principal shows up in court, when the forfeiture is set aside, and when bail is reinstated.

I find that it is the duty of the Surety to keep itself informed of when a defendant-principal does not show up in court. This is merely a corollary of the Surety's duty to keep itself informed of the dates on which the defendant-principal must appear.

The Rules of Court governing bail forfeiture proceedings do not require that immediate notification of the forfeiture be sent to the Surety.

\* \* \* \* \* \* \* \*

I am aware of the directive issued August 28, 1972 by the Administrative Office of the Courts regarding the enforcement of corporate surety bonds. This directive states:

When a forfeiture is declared, the Clerk of the Court shall enter the word 'forfeited' and the date of forfeiture at the end of the record of such recognizance and the Clerk of the Court shall immediately send notice of the forfeiture and demand for payment of the amount of the bond to the bondsman.

This directive, as indicated in the cover letter which accompanied it, was issued to benefit counties and municipalities in their collection of forfeited bail. It was not intended to benefit or protect the Surety. Thus, this County's failure to follow this procedure should not inure to the benefit of the Surety.

I find that the Surety was not prejudiced by the failure of the Court to notify it of the initial forfeiture of bail. This is particularly true in that these initial

---

[2]Terrell, Jackson, Moses, Johnson, Dillard and Yancey.

forfeitures were set aside. The Court, in setting aside the forfeitures, was merely exercising the powers given to it in *R.* 3:26–6(b):

> The Court may direct that a forfeiture be set aside if its enforcement is not required in the interest of justice upon such conditions as it imposed.

In setting aside the forfeitures, the Court gave the defendant-principal in each case a second chance, thereby relieving the Surety of the duty to pay immediately on the forfeited recognizance. Re-instatement of the bail likewise gives both the defendant and the surety another chance to appear in court as scheduled, in compliance with the terms of the recognizance. It also gives the Surety another chance to continue its business relationship with the defendant, to see that the defendant appears at every stage of the proceedings and to eventually be exonerated of liability on the bond.

The Surety here argues that had it been notified of the initial forfeitures in these cases, it would not have agreed to reinstatement of the bail. It does this, of course, with hindsight and at a time where it has already received the benefit of the set-aside of the initial forfeitures. Surety was benefitted for a period of years in the cases of defendants Charles Jackson, Marie Moses and Thomas Johnson. Therefore, the Surety should be estopped from raising this argument at this late date.

The Surety also ignores the fact that had it been following proper business procedures and keeping itself aware of the status of the defendants for whom it signed recognizances, it could have been released from the bond by surrendering the defendant into custody. *R.* 3:26–7 and *State v. Rice,* 137 *N.J.Super.* 593, 602 (Law Div.1975), aff'd. 148 *N.J.Super.* 145 (App.Div.1977). This alternative is always open to the Surety and is a way that it can be released from the bond if it feels that the defendant is too great a risk after a non-appearance. This is the course that the Surety here should have taken had it felt that the reinstatement of the bail jeopardized the likelihood of receiving its bond money back.

 We agree with Judge Bigley's conclusion that no notice of court dates or of forfeitures was due the surety prior to the motion for judgment on the forfeitures. The surety had neither a contractual nor a common-law right to such notice. Nor did any statute or rule give any right to such notice. Our relevant court rule, *R.* 3:26–6(a), simply states that "[u]pon breach of a condition of a recognizance, the prosecuting attorney shall move the court for a declaration of forfeiture of the bail...."

*R.* 1:13–3(b) regulates the contents of the form as follows:

> Contents. All surety and bail bonds given in any court shall provide that the principal and surety thereby submit themselves to the jurisdiction of the court (or to the jurisdiction of the trial court, if the bond is given in an appellate court); that they irrevocably appoint the clerk of the court having jurisdiction as their agent upon whom papers affecting their liability on the bond may be served; that they waive any right to a jury trial; that the liability of the

principal and surety may be enforced by motion in the action, if one is pending, without the necessity of an independent action; and that the motion may be served on the principal and surety by mailing it, by ordinary mail, to the clerk of the court, or to the surrogate in the case of a bond approved by the county court, probate division or the surrogate, who shall forthwith mail copies thereof by ordinary mail to the principal and surety at the addresses stated in the bond.

The rule was designed to clarify the surety's obligation which may be enforced by summary proceeding even if no action is pending. *Pressler, Current New Jersey Court Rules,* Comment *R.* 1:13–3(b) (1982).

Under standard operating procedure, the trial judge declares the forfeiture on the motion of the prosecutor when the defendant fails to appear. *See State v. Singletary,* 153 *N.J.Super.* 505, 513 (Law Div.1977), rev'd 165 *N.J.Super.* 421 (App.Div.), certif. den. 81 *N.J.* 50, on remand 170 *N.J.Super.* 454 (Law Div.1979). Although then not confronted with the issue of notice, this court has held that on a motion for judgment on a forfeiture the State must prove only that the defendant failed to appear and that the forfeiture was declared. *State v. Fields,* 137 *N.J.Super.* 79, 81 (App.Div.1975). As this court has observed: "There appears to be no uniformity in the State with respect to the time interval between declaration of forfeiture and entry of judgment." *In re Midland Ins. Co.,* 167 *N.J.Super.* 237, 243 (App.Div. 1979).

The absence of any express notice requirement and the availability of summary proceedings conforms to the general view that a forfeiture proceeding is more in the nature of a judicial declaration than a judgment and is preliminary to enforcement proceedings. *See* 8 *Am.Jur.2d, Bail and Recognizance,* § 145 at 685 (1980). This is also consistent with the rule in other jurisdictions that the state has no duty to notify a surety of the principal's appearance dates. The Federal Rules of Criminal Procedure do not require notice of court appearance to the surety prior to the declaration of forfeiture. *Fed.R.Crim.P.* 46(e)(1) and (3). *E.g., United States v. Vera-Estrada,* 577 *F.*2d 598, 599–600 (9th Cir.1978); *United States v. Marquez,* 564 *F.*2d 379, 381 (10th Cir.1977). For similar holdings *see Allegheny*

*Mut. Cas. Co. v. State,* 35 *Md.App.* 55, 368 *A.*2d 1032 (Ct.Spec. App.1977); *Commonwealth v. Stuyvesant Ins. Co.,* 8 *Mass.App.* 871, 391 *N.E.*2d 277 (App.Ct.1979), *cert.* den. 444 *U.S.* 1080, 100 S.Ct. 1033, 62 L.Ed.2d 764 (1980); *State v. Amador,* 98 *N.M.* 270, 648 *P.*2d 309 (1982); *State v. Mills,* 23 *N.C.App.* 485, 209 *S.E.*2d 370 (Ct.App.1974); *Pride v. Anders,* 266 *S.C.* 338, 223 *S.E.*2d 184 (1976); *State v. Holloway,* 262 *S.C.* 552, 206 *S.E.*2d 822 (1974). *See also State v. Shell,* 242 *Iowa* 260, 45 *N.W.*2d 851 (1951); *State v. Myers,* 221 *La.* 173, 59 *So.*2d 111 (Sup.Ct.1952); *Manning v. State,* 190 *Okl.* 65, 120 *P.*2d 980 (1942).

 An exception to the general rule is found in *State v. Moccia,* 120 *N.H.* 298, 414 *A.*2d 1275 (1980) (Grimes, C.J.). There New Hampshire recognized that the prevailing rule in this country has always been that, absent statutory provision to the contrary, "there is no obligation upon the court to provide the surety notice of its actions regarding the accused." *Id.* at 1277. But in *Moccia* the local custom was to provide written notice of trial dates to the surety and none had been received. The court noted, "the general rule is that the court need not provide such notice, that as a necessary incident of assuming custody of the accused, the surety acquires a duty to learn when his principal's presence in court is required." *Id.* at 1277–1278. However, in the face of this undisputed local custom, the court remanded for a hearing to determine if the custom of notice was actually followed in this instance. If notice had not been given, the court held that this deviation from the established custom of notification of trial dates was a sufficient ground to allow a reasonable time for the surety to produce the defendant. *Ibid.*

In the case before us the custom of notice to the surety had been abandoned in Camden County in the early 1970's as the 10% cash bail program evolved. We therefore conclude that there has been no sufficient extant local custom established here which requires deviation from the standard rule. Further, our research discloses that notice of trial dates to the surety is required only in jurisdictions where a statutory command exists.

*E.g., Estate of Maltie v. State,* 404 *So.*2d 384 (Fla.Dist.Ct.App. 1981); *Ramsey v. State,* 225 *So.*2d 182 (Fla.Dist.Ct.App.1969); *Russel v. State,* Okla., 488 *P.*2d 1264 (Sup.Ct.1971); *see also Accredited Surety & Cas. Co. v. Busbee,* 137 *Ga.App.* 808, 224 *S.E.*2d 852 (Ct.App.1976); *Lee v. State,* 174 *Ind.App.* 510, 368 *N.E.*2d 1172 (Ct.App.1977).

■ We conclude that lack of notice of trial dates to the surety was an insufficient reason to set aside the forfeitures or to deny judgment to the County, follow the general rule, and affirm. We agree with the Law Division judge that the declared policy of the AOC expressed in 1972 to encourage prompt action by county counsel on forfeitures, which policy was not followed here, did not relieve the surety of the absolute duty to produce the defendant at all relevant times. Whether providing notice to personal or corporate surety of trial dates in order to aid expeditious handling of the criminal calendar would be a wiser policy remains a consideration for future rule amendment.

■ We also reject the surety's contention that failure to give prompt notice of the forfeitures requires that they be set aside. In the words of the court in *Allegheny Mut. Cas. Co., supra,* 368 *A.*2d at 1033, "[t]he abrupt cessation of the policy of benign neglect in enforcing bail forfeitures, . . ., has jolted the bondsmen" in this situation. But the equities do not favor the surety in this case. Again, as the Maryland court stated, the surety "seems to have been content to post the bonds and then forget the whole thing. It was only when called upon to make good the bonds that they awakened to what had occurred." *Id.* at 1034. If the surety at any time wished to absolve itself of its undertaking, exoneration was available through surrender of the defendant into custody. *R.* 3:26–7. Relief is also presently available by motion for whole or partial remission even after judgment. *R.* 3:26–6(c). *See State v. Peace,* 63 *N.J.* 127, 129 (1973); *State v. Hyers,* 122 *N.J.Super.* 177, 180 (App.Div.), rev'd on other grounds 126 *N.J.Super.* 259 (App.Div.1973).

Our rules provide no time requirement for notice of forfeiture to the surety. The rules only require county counsel to proceed "forthwith to collect the forfeited amount." *R.* 3:26–6(a). The record discloses that by early 1981 the time lapse between forfeiture and notice to the surety had been drastically reduced in Camden County. We are satisfied that the post-judgment remission procedure under the *Peace-Hyers* guidelines will sufficiently protect the interests of the surety in those cases where defendants have been or will be surrendered or apprehended post-judgment. Indeed, hearings on post-judgment remission motions are proceeding or pending under our order of partial remand of these causes on January 24, 1983. These remission hearings are "essentially equitable" in nature; delay in notice of forfeiture to the surety may be a demonstrable equitable factor to be considered in the remission decision in a particular case, along with all other relevant factors. *See State v. Hyers, supra,* 122 *N.J.Super.* at 180.

▉ Finally, defendant contends that the Law Division judge did not make sufficient individualized findings of fact in each case wherein relief had been sought. *See State v. Singletary, supra,* 165 *N.J.Super.* at 424–427. We are satisfied that in those cases in which hearings were held and judgment was entered, *see* above at n. 1, or in which the bail forfeiture was lifted, above at n. 2, the judge did give sufficient individualized attention to the surety's applications.

Pursuant to our partial remand in January 1983 for remission proceedings and to the court rules, *R.* 3:26–6(c), post-judgment remission proceedings may be entertained in all of the cases and, as noted, are presently proceeding. If the surety is dissatisfied with the result of any such applications, appellate review is available in any particular case pursuant to the *Peace-Hyers* standards applied in the context of this situation. Such review will, we hope, be upon a more ample and precise record than has been here provided by the parties on this appeal.

Affirmed.